Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| ALL SYSTEMS ROOFING AND WATERPROOFING, INC., PATRICK TROWBRIDGE<br><br>Recurridos<br><br>v.<br><br>JUSTIN A. TIRRI EDUN H/N/C THE OUTLET Y/O BELZ OUTLET MALL Y/O THE OUTLET AT ROUTE 66, F.O.M. PUERTO RICO S.E. Y OTROS<br><br>Peticionarios | KLCE202400870 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso número: CA2020CV02547<br><br>Sobre:<br>Cobro de Dinero – Ordinario, Incumplimiento de Contrato |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# **RESOLUCIÓN**

En San Juan, Puerto Rico, a 23 de septiembre de 2024.

Comparece la parte peticionaria, Justin A. Tirri Edun y FOM Puerto Rico, S.E., mediante el recurso de epígrafe y nos solicita la revocación de la *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 5 de junio de 2024. En el referido dictamen, el foro recurrido declaró No Ha Lugar la solicitud de remedio por expoliación de prueba promovida por la parte peticionaria.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto solicitado. Veamos.

## I

El 3 de diciembre de 2020, All Systems Roofing and Waterproofing, Inc. (ASRW o recurrido) incoó una *Demanda* sobre cobro de dinero e incumplimiento de contrato en contra de Justin A. Tirri Edun h/n/c The Outlet y/o Belz Outlet Mall y/o The Outlet

at Route 66 (Tirri Edun) y F.O.M. Puerto Rico, S.E. (FOM) (peticionarios).[1] En síntesis, indicó que, el 11 de diciembre de 2017, Tirri Edun contrató sus servicios para hacer una reparación y sellado de techo en la propiedad comercial de este, por la cantidad de $4,190,520.00. Según adujo, Tirri Edun le informó que los fondos para las reparaciones del inmueble se obtendrían del pago de unas pólizas de seguro que cubrían los daños ocasionados a la propiedad por el paso del huracán María. Señaló que Tirri Edun realizó varios pagos en calidad de abono y, posteriormente, hizo varios pagos con cheques y dineros de otras corporaciones. Detalló que, el 12 de abril de 2019, modificaron el contrato, a petición de Tirri Edun, para pactar unos cambios en los trabajos a ser realizados por un nuevo precio de $1,854,773.48. Asimismo, indicó que las partes pactaron un plan de pago, a razón de $20,000.00 mensuales, así como un pago de $600,000.00 en concepto de abono al segundo contrato.

Por otro lado, ASRW arguyó que, el 20 de septiembre de 2019, habiendo cumplido con todas sus obligaciones contractuales y completado gran parte del trabajo contratado, Tirri Edun le notificó la cancelación del contrato y solicitó el cese de labores en la propiedad comercial. Argumentó que, posteriormente, no se le permitió recoger sus materiales que se encontraban en el inmueble en cuestión, razón por la cual radicó una querella criminal en contra de Tirri Edun por apropiación ilegal y apropiación ilegal agravada. Alegó que, en varias ocasiones, le reclamó extrajudicialmente a Tirri Edun la cantidad adeudada de $1,165,429.87, pero no tuvo éxito. Arguyó que la súbita cancelación del contrato por parte de Tirri Edun, sin mediar justa causa, constituía un incumplimiento del contrato. En vista de ello, sostuvo que la deuda estaba líquida, vencida y exigible, y solicitó el pago de $1,165,429.87 por concepto

---

[1] Apéndice del recurso, págs. 19-27.

de materiales, labor realizada, nómina, arbitrios, fletes, impuestos, disposición de escombros, entre otros. A su vez, solicitó el pago de costas y gastos de litigación, más una partida de honorarios de abogado.

Por su parte, el 26 de febrero de 2021, Tirri Edun y FOM presentaron su alegación responsiva, así como una reconvención sobre daños y perjuicios por incumplimiento contractual. [2] En esencia, negaron las alegaciones esbozadas en su contra. Argumentaron que ASRW rindió sus servicios de manera deficiente, lo que provocó que FOM cancelara el contrato, a lo que ASRW consintió. Aclararon que, el contrato de obras pactado por las partes fue cancelado el 28 de enero de 2019 y que, posteriormente, se acordó que la relación profesional entre las partes tendría una vigencia mensual, en la que ASRW llevaría a cabo los trabajos en el techo de la propiedad comercial por un costo de hasta $20,000.00 mensuales, siempre y cuando se llevara a cabo el trabajo satisfactoriamente. Plantearon que no tuvieron otra alternativa que cancelar el contrato con ASRW por su desempeño negligente y altamente culposo en el cumplimiento del contrato entre las partes.

De otro lado, Tirri Edun y FOM afirmaron que los materiales que estaban en el techo de la propiedad en cuestión les pertenecían, según lo establecido en el contrato y admitido por ASRW en la alegación número nueve (9) de la *Demanda*. Negaron haber sido notificados de querella alguna, según propuesto por ASRW. Arguyeron que le habían pagado a ASRW por todos los trabajos realizados y reiteraron que la cancelación del acuerdo entre las partes se debía exclusivamente a los actos culposos y negligentes de ASRW en la ejecución del contrato y de sus responsabilidades.

---

[2] Entrada Núm. 14 en el Caso Núm. CA2020CV02547 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

En cuanto a la reconvención, Tirri Edun y FOM sostuvieron que, luego de varios meses de comenzadas las labores, el inmueble en controversia comenzó a sufrir desperfectos causados por la pobre ejecución del contrato acordado con ASRW. Aseguraron que los daños sufridos en la referida propiedad sucedieron a pesar de que el representante de ASRW aseguró que no habría problemas con el interior del inmueble mientras se llevaran a cabo los trabajos en el techo. Argumentaron que la ejecución negligente de ASRW causó que FOM ordenara el cese de las labores para prevenir daños adicionales y dar por terminado el acuerdo suscrito entre las partes. Indicaron que, como resultado de lo anterior, FOM accedió a darle una segunda oportunidad a ASRW bajo la condición de que el acuerdo sería renovado mensualmente. Según adujeron, acordaron que FOM pagaría un máximo de $20,000.00 mensuales, siempre y cuando ASRW llevara a cabo los trabajos a una velocidad razonable y satisfactoria. Arguyó que, no obstante, ASRW continuó ejecutando sus obligaciones contractuales de manera negligente y con total dejadez, por lo que FOM solicitó el cese inmediato de la renovación del techo de la propiedad comercial en cuestión. En vista de ello, solicitó $2,000,000.00 por los daños y perjuicios contractuales sufridos como resultado del incumplimiento de ASRW, así como el pago de $30,000.00 por concepto de costas y honorarios de abogado por temeridad.

El 31 de marzo de 2021, ASRW contestó la reconvención y, en esencia, negó las alegaciones en su contra.[3] Argumentó que Tirri Edun solicitó varios cambios al contrato original, eliminando trabajos cotizados y reclamando que se realizaran labores que no estaban incluidas en el acuerdo de las partes. Alegó que había pagado los materiales, equipos y labor a su costo, toda vez que Tirri

---

[3] Apéndice del recurso, págs. 41-49.

Edun incumplió con los pagos acordados para cubrir el costo de dichos materiales. A su vez, planteó que los atrasos en el abono al contrato provocaron dilaciones en el proyecto, atribuibles única y exclusivamente a Tirri Edun. Sostuvo que Tirri Edun había contratado otros servicios que se tenían que realizar en el techo de la estructura, los cuales dañaron y/o atrasaron los trabajos realizados por este. Arguyó que, en un sinnúmero de ocasiones, Tirri Edun no acogió sus recomendaciones para proteger la propiedad adecuadamente. Aseguró que realizó los trabajos contratados, guardando siempre el más alto estándar de calidad. Por otro lado, mencionó que, entre las justificaciones que Tirri Edun le dio para la súbita e injustificada cancelación del contrato en controversia, fue que se habían agotado todos los dineros que la compañía de seguro le había pagado y que los negocios no iban bien, razón por la cual se iba a radicar en quiebra.

Así las cosas, el 6 de abril de 2022, Tirri Edun y FOM instaron una *Solicitud de Remedio por Expoliación de Prueba*.[4] Indicaron que, el 16 de marzo de 2022, durante la deposición que se le tomó al presidente de ASRW, Patrick Trowbridge (Trowbridge), este declaró sobre su uso de la aplicación de mensajería *WhatsApp* para comunicarse con Tirri Edun, así como con otros clientes de ASRW. Detallaron que le habían solicitado a Trowbridge copia de todas las comunicaciones relacionadas al caso, incluyendo fotografías y videos, sostenidas en la mencionada aplicación, pero esto fue objetado por la representación legal de este bajo el fundamento de falta de información, mientras que Trowbridge comentó que no tenía el teléfono móvil donde se encontraban los mensajes. Admitieron que, como recipientes y emisores de esas comunicaciones, las tenían

---

[4] Apéndice del recurso, págs. 50-58. Junto a su petitorio, Tirri Edun y FOM incluyeron los siguientes documentos: (1) copia parcial de la *Deposición* a Tirri Edun el 17 de agosto de 2021; (2) copia de las comunicaciones entre Patrick Trowbridge y Tirri Edun; (3) varias fotografías del techo e interior de la propiedad en controversia. Véase, Apéndice del recurso, págs. 59-101.

en su posesión y, durante el proceso de descubrimiento de prueba, le proveyeron esos mensajes, fotografías y videos a ASRW. Detallaron que, durante la deposición de Trowbridge, la representación legal de ASRW citó porciones particulares de las comunicaciones emitidas por *WhatsApp* y que el propio Trowbridge reconoció su existencia, así como las respuestas que brindó.

Por otro lado, Tirri Edun y FOM argumentaron que las comunicaciones realizadas entre Trowbridge y Tirri Edun, por el mencionado sistema de mensajería, eran medulares para comprender y sopesar las alegaciones en el caso. Arguyeron que estas fueron contemporáneas a los eventos y contenían una radiografía coetánea de los sucesos y de las respuestas de las partes. Plantearon que, al final de la relación comercial entre las partes, ASRW conocía que existía una alta posibilidad de un litigio, por lo que estaba obligado a preservar toda la evidencia relevante. Propusieron que, aunque habían conservado las comunicaciones intercambiadas con ASRW, de todos modos, este último se había negado a proveer los mensajes bajo el entendido de que Trowbridge no los conservó, al igual que tampoco conservó otros mensajes relacionados con el pleito que pudo haber intercambiado con otros clientes, personal empleado o con gerenciales del proyecto. Explicaron que, sin embargo, según indicó Trowbridge en su deposición, este no tenía los mensajes y su representación legal afirmó que no se producirían porque la compañía ASRW no los conservaba.

Tirri Edun y FOM reiteraron que, tales comunicaciones eran relevantes para sus defensas y para la reconvención entablada. Sostuvieron que no producirlos afectaba el debido proceso de ley, pues, ante la falta de preservación de ASRW, se veían en una desventaja injusta para, no solo defenderse, sino probar su reclamación. Afirmaron que habían conservado las comunicaciones

emitidas y recibidas por Trowbridge, por lo que no estaban absolutamente indefensos, pero la falta de preservación de otros mensajes, fotografías y videos pertinentes por parte de ASRW, ciertamente, afectaban de manera nociva su defensa. Ello, según adujeron, al punto de que debía activarse la inferencia de que esa evidencia relevante que fue destruida hubiese sido desfavorable para ASRW.

El 6 de mayo de 2022, ASRW se opuso.[5] En síntesis, sostuvo que el petitorio promovido por Tirri Edun y FOM era improcedente en derecho porque no se había destruido la prueba solicitada. Alegó que, durante todo el litigio, Tirri Edun y FOM han tenido en su poder la evidencia de esas alegadas comunicaciones que reclaman que se produzcan, las cuales alegan, a su vez, que han sido destruidas. Enfatizó que Tirri Edun y FOM sometieron la transcripción de las alegadas conversaciones como parte de su moción, citando algunos extractos de estas en su escrito. Por consiguiente, argumentaron que era forzoso concluir que la alegación de Tirri Edun y FOM, a los efectos de estar en desventaja en la litigación del presente pleito y/o reclamando violación al debido proceso de ley, era totalmente infundada. Aseguró que dicha evidencia no fue destruida, pues la misma se encontraba en poder de quienes la habían reclamado y quienes admitieron que la habían conservado.

Luego de varias incidencias procesales, y evaluadas las posturas de las partes, el 5 de junio de 2024, el Tribunal de Primera Instancia emitió y notificó la *Resolución* que nos ocupa, mediante la cual declaró No Ha Lugar la *Solicitud de Remedio por Expoliación de Prueba* promovida por Tirri Edun y FOM. [6] El foro primario fundamentó su decisión en lo siguiente:

---

[5] Apéndice del recurso, págs. 102-114. ASRW acompañó su moción con una copia parcial de la *Deposición* de Patrick Trowbridge el 16 de marzo de 2022. Véase, Apéndice del recurso, págs. 115-121.
[6] Íd., págs. 1-3.

[S]e determina que la solicitud es improcedente en derecho[,] pues las partes codemandadas tienen en su posesión y control los mensajes en la plataforma WhatsApp que se indican fueron expoliados por el Sr. Patrick Trowbridge, quien[,] además[,] no es parte en este caso ni funge como representante de la parte demandante. De igual manera, en cuanto a los demás mensajes que se indican fueron remitidos o recibidos por el Sr. Trowbridge con otros clientes, empleados o gerenciales relacionada con este litigio, se determina que el Sr. Trowbridge no tenía un deber de preservar evidencia. Sabido es que una persona apercibida de una posible reclamación en su contra tiene la obligación de preservar prueba. También tiene dicha obligación si existe un deber legal o ético que le exija preservar prueba, si voluntariamente asumió la obligación o si surge de las circunstancias particulares del caso. Asimismo, una parte tiene la obligación de preservar prueba que podría estar sujeta al descubrimiento, aunque [e]sta no se le haya requerido. La obligación de preservar información almacenada electrónicamente estará sujeta a lo dispuesto en la Regla 34.3 de Procedimiento Civil. Ninguna de las instancias antes mencionadas aplica a la solicitud realizada por las partes codemandadas.[7]

En desacuerdo, el 20 de junio de 2024, Tirri Edun y FOM presentaron una *Moción de Reconsideración*,[8] la cual fue declarada No Ha Lugar por el foro *a quo* el 12 de julio del mismo año.[9]

Inconforme, el 12 de agosto de 2024, la parte peticionaria acudió ante nos mediante el recurso de epígrafe y realizó el siguiente señalamiento de error:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR NO HA LUGAR LA SOLICITUD DE EXPOLIACIÓN DE PRUEBA PRESENTADA POR LOS PETICIONARIOS[,] A PESAR DE QUE NO EXISTE CONTROVERSIA EN CUANTO A QUE EL RECURRIDO NO PRESERVÓ PRUEBA MEDULAR PARA ESTE CASO Y PESE A QUE LAS ACTUACIONES DE LA PARTE RECURRIDA COLOCAN A LA PETICIONARIA EN UNA DESVENTAJA QUE EL DEBIDO PROCESO DE LEY NO TOLERA[.]

En cumplimiento con nuestra *Resolución* del 21 de agosto de 2024, y concedida una prórroga a esos efectos, la parte recurrida compareció mediante *Alegato en Cumplimiento de Orden en*

---

[7] Apéndice del recurso, págs. 2-3.
[8] Íd., págs. 4-13.
[9] Íd., pág. 18.

*Oposición a Expedición de Certiorari* el 13 de septiembre del mismo año.

Posteriormente, el 16 de septiembre de 2024, la parte peticionaria presentó una *Breve Moción en Torno a Alegato en Cumplimiento de Orden en Oposición a Expedición de Certiorari.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

> [. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente,

cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios a considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *BPPR v. SLG Gómez-López*, 2023 TSPR 145, 213 DPR ___ (2023); *Rivera et al. v. Arcos Dorados et al.*, supra; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020). Así, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, funge como complemento a la Regla 52.1 de Procedimiento Civil, *supra. Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

> El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

La parte peticionaria plantea como su único señalamiento de error que el Tribunal de Primera Instancia incidió al declarar No Ha Lugar su solicitud por expoliación de prueba. En síntesis, sostiene que no existe controversia en cuanto a que la parte recurrida no preservó prueba medular para este caso. Arguye que las actuaciones

de la parte recurrida la colocan en una desventaja que el debido proceso de ley no tolera.

Luego de un examen sosegado del expediente ante nos, colegimos que no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el Tribunal de Primera Instancia. Al entender sobre los planteamientos que la parte peticionaria propone ante este Foro, concluimos que la sala de origen no incurrió en error de derecho ni en abuso de discreción al declarar No Ha Lugar la solicitud de remedio por expoliación de prueba promovida por la parte peticionaria, ello a fin de que podamos soslayar la norma de abstención judicial que, en dictámenes como el de autos, regula el ejercicio de nuestras funciones.

Al evaluar los documentos que obran en autos, concluimos que nuestra intervención, en esta etapa de los procedimientos, no resulta oportuna. Siendo así, y en ausencia de prueba que nos permita resolver en contrario, denegamos expedir el auto de *certiorari* que nos ocupa, al amparo de lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 de nuestro Reglamento, *supra*.

**IV**

Por los fundamentos que anteceden, denegamos la expedición del recurso de *certiorari* solicitado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
